IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LASHAWN SMITH,<br>On behalf of her son, A.J.,<br>206 Webster Street NE, Apt. 1<br>Washington, D.C. 20011,<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br>A Municipal Corporation,<br>One Judicial Square<br>441 Fourth Street, NW<br>Washington, D.C. 20001,<br><br>to serve:<br><br>MURIEL BOWSER, MAYOR,<br>District of Columbia<br>441 4th St. NW, 11th Fl.<br>Washington, D.C. 20002,<br><br>KARL A. RACINE,<br>ATTORNEY GENERAL,<br>District of Columbia<br>441 4th Street, NW, 11th Fl.<br>Washington, D.C. 20002,<br><br>Defendant. | : | Civ. A. No: |

COMPLAINT

This is an appeal of the April 2, 2016 Hearing Officer Determination ("HOD") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") and the American with Disabilities Act ("ADA"), and the District of Columbia Human Rights Act ("HRA"). The District of Columbia denied Ms. LaShawn Smith's son, A.J., of a free appropriate public education ("FAPE"), and offered placement in advanced classes only if Ms. Smith would agree to a reduction in service hours on A.J.'s Individualized Education Program.

## JURISDICTION

1. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C § 1415.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in the District of Columbia.

## PARTIES

3. Ms. Smith's is the parent of A.J., a student with disabilities who has been identified as eligible for special education and related services under the IDEA by the District of Columbia Public School System ("DCPS").

4. Defendant, the District of Columbia Government, is a municipal corporation that receives federal funds pursuant to the IDEA, to ensure access to a free and appropriate public education ("FAPE") to all children until twenty-one years of age under federal law and twenty-two years of age under the local law, and is obligated to comply with the applicable federal regulations and statutes including but not limited to the IDEA. The District of Columbia Public Schools ("DCPS") is *non sui juris* of the District of Columbia.

## FACTUAL BACKGROUND

5. Ms. Smith and A.J. ("the student") reside in the District of Columbia.

6. The student is less than 21 years old and attends a DCPS high school.

7. The student's disability is classified as "emotional disturbance" and his disability manifests in conflicts with peers and school staff at an elevated rate, sometimes rising to the level of a physical altercation. A.J. has trouble taking responsibility for his actions and resolving conflicts appropriately.

8. A.J.'s academics suffer when he is off task, but has been described by his IEP team

members as “eager to learn” and when engaged A.J. can follow directions, remain on task, and remain respectful of school staff and his peers.

9. At the beginning of the 2015-2016 school year A.J. was assigned to Columbia Heights Education Campus (“CHEC”) and was placed in the Specific Learning Support (“SLS”) Program. (HOD at 6.)

10. SLS classrooms are designed to accommodate students with specific learning disabilities. SLS classes consist of a special education teacher and a paraprofessional who are trained to meet the needs of students with learning disabilities and complex learning styles.

11. A.J. does not have a specific learning disability. A.J. is a “twice exceptional” student who is intellectually gifted, but limited in accessing the general education curriculum by his emotional disturbance.

12. A.J. gets bored in his classes easily when he finishes his work faster than his peers. This happened frequently when A.J. was in the SLS classroom.

13. When A.J. gets bored, his behavioral issues emerge. There were numerous disciplinary referrals and findings that each action was a manifestation of A.J.'s disability while he was in the SLS classroom. These manifestations ranged from verbal aggression towards staff and peers, to assaulting students and staff, to causing property damage. (HOD at 4.)

14. CHEC created a Behavior Intervention Plan (“BIP”) in November, and a student safety contract in December in attempts to curb A.J.'s behavioral outbursts, but his negative behaviors continued. (HOD at 5.)

15. A.J. learns quickly, and his outbursts occur when he has finished his work, or in the gym or cafeteria where he does not have academic tasks. (HOD at 6.)

16. A.J. has fewer behavioral challenges in classes that he found academically rigorous, and Ms. Smith was offered to allow A.J.'s entry into Advanced Placement (“AP”) classes, but

the hours on A.J.'s IEP would have to be reduced. (HOD at 6.)

17. A.J.'s grades are erratic, with grades ranging from A to C, and sometimes swapping from good grades to mediocre grades, and vice versa, over the course of the academic year. (HOD at 7.)

18. CHEC offered placing A.J. in AP biology, but only if Ms. Smith would agree to reduce the hours on A.J.'s IEP. (HOD at 6.)

19. DCPS's BES programs at the high school level are based on "cohorts," groups of students that start in a certain school together. CHEC did not have a 9th grade BES cohort, so A.J. joined the 10th grade BES cohort. (HOD at 6.)

20. A.J. was the only 9th grader in the 10th grade BES cohort, but CHEC refused to push in AP content, instead offering advanced instruction only if Ms. Smith agreed to substantial reductions to A.J.'s services provided pursuant to the IDEA. (HOD at 6.)

21. The HOD rejects the plain language of the Dear Colleague Letter from the Department of Education dated December 26, 2007, which states unambiguously "In general, conditioning participation in accelerated classes or programs by qualified students with disabilities on the forfeiture of necessary special education or related aids and services amounts to a denial of FAPE under both Part B of the IDEA and Section 504." (HOD at 12; Dear Colleague Letter: Access by Students with Disabilities to Challenging Academic Programs, *available at* https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20071226.pdf (hereinafter, "Dear Colleague Letter").)

22. The Hearing Officer rejected the Department of Education's interpretation of the IDEA, "Conditioning enrollment in an advanced class or program on the forfeiture of needed special education or related aids and services is also inconsistent with the principle of individualized determinations, which is a key procedural aspect of the IDEA, Section 504

and Title II." (Dear Colleague Letter at 3).

## CLAIMS FOR RELIEF

### Claim I: Inappropriate Placement

23. Plaintiff incorporates by reference all previous statements.

24. Students with disabilities must be educated in the least restrictive age-appropriate environment in a placement based on their individual needs and services, as agreed upon by the IEP team. 34 C.F.R. §§ 300.114, 300.116.

25. A.J.'s placement in an SLS classroom at CHEC was not an appropriate placement, as it was not based on his individual needs. A.J. does not have a specific learning disability.

26. A.J.'s placement in the 10th grade BES classroom at CHEC was not an appropriate placement. A.J. is not a 10th grader and despite this shift, manifestations of his disability continued to prevent him to access the curriculum.

27. By initially placing A.J. in a SLS classroom, DCPS denied A.J. an appropriate placement, denied A.J. a FAPE, and violated the IDEA.

28. By moving A.J. out of an age-appropriate classroom DCPS denied A.J. an individualized education, denied A.J. a FAPE, and violated the IDEA.

### Claim II: Violation of the Americans with Disabilities Act

29. Ms. Smith incorporates by reference all previous statements.

30. Ms. Smith administratively exhausted this ADA claim to the greatest extent allowed by the hearing officer pursuant to the IDEA's exhaustion provision. *See* 20 U.S.C. 1415(l).

31. Under Title II of the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Title II requires that

public entities provide accommodations that give individuals with disabilities the same opportunity to participate in or benefit from a service as that which is afforded to persons without disabilities. 28 C.F.R. § 35.130(b)(1)(ii)(2014); *Pierce v. District of Columbia*, 128 F.Supp. 250, 266-67 (D.D.C. 2015).

32. Ms. Smith will prevail under the ADA because she has shown that (1) A.J. is a qualified individual with a disability, (2) that the District denied him the benefits of or prohibited him from participating in a public entity's services, programs, or activities, and (3) that denial or prohibition was "by reason of" his disability. *Alston v. District of Columbia*, 561 F.Supp.2d 29, 37 (D.D.C. 2008).

33. A.J. is a qualified individual with a disability by way of his emotional disturbance. A.J. has been denied the benefits of AP classes offered to students in the District of Columbia. The District has denied A.J.'s participation in A.P. classes solely because he requires the accommodation of specialized instruction in an outside-the-general-education environment. But for A.J.'s emotional disturbance and full time IEP, A.J. would be receiving the benefit of AP classes offered by the District.

Claim III: Violation of the District of Columbia Human Rights Act

34. Ms. Smith incorporates by reference all previous statements.

35. The IDEA administrative exhaustion provision does not apply to state law. 20 U.S.C. 1415 (l)(applying to ADA claims, 504 claims, and "other federal laws protecting the rights of children with disabilities")

36. This Court can consider claims of discrimination under the DCHRA under the same framework as the ADA. *See Badwal v. Bd. Of Trustees of Univ. of Dist. of Columbia*, Civ No. 12-2073 (KBJ), 2015 WL 5692842, at *6 (D.D.C. 2015) (analyzing DCHRA claims using an ADA analysis).

37. Accordingly, in order to prevail on a claim under the ADA, Ms. Smith must show that (1) A.J. is a qualified individual with a disability, (2) that the District denied him the benefits of or prohibited him from participating in a public entity's services, programs, or activities, and (3) that denial or prohibition was "by reason of" his disability. *See Alston*, 561 F.Supp.2d at 37.

38. A.J. is a qualified individual with a disability by way of his emotional disturbance. A.J. has been denied the benefits of AP classes offered to students in the District of Columbia. The District has denied A.J.'s participation in A.P. classes solely because he requires the accommodation of specialized instruction in an outside-the-general-education environment. But for A.J.'s emotional disturbance and full time IEP, A.J. would be receiving the benefit of AP classes offered by the District.

<u>CONCLUSION</u>

39. The District of Columbia provided the student with a class placement that was not appropriate, where A.J. was the only 9th grader, thereby denying A.J. a FAPE under the IDEA.

40. The District of Columbia refused to make AP class content available to the student's placement, and conditioned his access to advanced academic content on Ms. Smith's sacrificing her rights under the IDEA thereby violating the ADA and DCHRA.

WHEREFORE, the Plaintiff prays that this Court:

1. Reverse the Hearing Officer's Determination and remand the case for an appropriate determination of compensatory education;
2. Declare that the actions of the District of Columbia, as alleged herein, violated the IDEA, ADA, and the DCHRA;

3. Enter judgment awarding Ms. Smith compensatory and punitive damages in the amount of $50,000, or in an amount appropriate to the evidence adduced before the Court;
4. Award Plaintiff's attorney fees and costs of this action;
5. Award any other relief that the Court deems just and proper.

Respectfully submitted,

____________________

Charles Moran [970871]
1220 L Street NW, Suite 700
Washington, D.C. 20005
(202) 742-2022
charles.moran@camoranlaw.com

June 30, 2016