**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
Office of Dispute Resolution
810 First Street, N.E., 2nd Floor
Washington, D.C. 20002

| | | |
|---|---|---|
| *Student*,[1] through his *Parent*, *Petitioner*, | ) | Date Issued: 4/2/16 |
| | ) | Case No.: 2016-0023 |
| v. | ) | Hearing Officer: Keith L. Seat, Esq. |
| District of Columbia Public Schools ("DCPS") and Office of the State Superintendent of Education ("OSSE"),[2] Respondent. | ) | Hearing Date: 3/25/16<br>Hearing Location: ODR Room 2006 |

# HEARING OFFICER DETERMINATION

## Background

Petitioner, Student's mother, filed a due process complaint alleging that Student had been denied a free appropriate public education ("FAPE") in violation of the Individuals with Disabilities Education Improvement Act ("IDEA") because DCPS put him in unsuitable programs and failed to provide Advanced Placement and college courses to avoid behavior problems. DCPS responded that it did provide the self-contained environment required by Student's IEP and that he has been academically successful in his placement and location of services.

## Subject Matter Jurisdiction

Subject matter jurisdiction is conferred pursuant to IDEA, 20 U.S.C. § 1400, *et seq.*; the implementing regulations for IDEA, 34 C.F.R. Part 300; Title V, Chapter E-30, of the District of Columbia Municipal Regulations ("D.C.M.R.") and 38 D.C. Code 2561.02.

---

[1] Personally identifiable information is provided in Appendix A, including terms initially stated in italics.
[2] OSSE was dismissed with prejudice from this case by Order Granting Petitioner's Motion to Withdraw Complaint Against OSSE issued by the undersigned on 2/19/16.

## Procedural History

Following the filing of the due process complaint on 2/4/16, the case was assigned to the undersigned on 2/5/16. Respondent DCPS's response to the complaint was filed on 2/12/16 and did not challenge jurisdiction apart from noting that Hearing Officers do not have jurisdiction over ADA claims. Respondent OSSE's response to the complaint was filed on 2/11/16 and did not challenge jurisdiction. OSSE filed a Motion to Dismiss for Failure to Serve on 2/8/16, followed by a Motion to Dismiss for Failure to State a Claim on 2/11/16. Petitioner filed a Motion to Withdraw Complaint Against OSSE on 2/17/16, which was granted, and OSSE was dismissed with prejudice by the undersigned on 2/19/16.[3]

The resolution session meeting took place on 2/19/16, but the parties neither settled the case nor terminated the 30-day resolution period, which ended on 3/5/16. A final decision in this matter must be reached no later than 45 days following the end of the resolution period, which requires a Hearing Officer Determination ("HOD") by 4/19/16.

The due process hearing took place on 3/25/16 and was closed to the public. Petitioner was represented by *Petitioner's counsel*. DCPS was represented by *Respondent's counsel*. Counsel discussed settlement at length near the beginning of the hearing without success. Petitioner was present for the entire hearing.

Neither party objected to the testimony of witnesses by telephone, although there were none. The parties agreed on no stipulations.

Petitioner's Disclosure statement, submitted on 3/18/16, consisted of a witness list of 4 witnesses and documents P1 through P27, which were admitted into evidence without objection. Respondent had filed a written objection to P24 through P27, which are audio recordings that were submitted through a Dropbox link, objecting on the basis of authenticity, but withdrew its objection after testimony from Parent. Petitioner re-filed its full set of Disclosures on 3/25/16, in order to replace documents that needed to be redacted to omit the names of other students.

Respondent's Disclosure statement, submitted on 3/18/16, consisted of a witness list of 6 witnesses and documents R1 through R9, of which only R1, R3, R4, R5, R6, R7, and R8 (but not R2 and R9) were offered at the due process hearing and were admitted into evidence without objection.

Petitioner's counsel presented two witnesses in Petitioner's case-in-chief (*see* Appendix A):

1. Parent

---

[3] From this point in the HOD, all references to "Respondent" refer only to DCPS, unless otherwise specified.

2. *Community Support Worker*

Respondent's counsel presented one witnesses in Respondent's case (*see* Appendix A): *Vice President of Special Education and Response to Intervention* at *Public School* ("Vice President").

Petitioner's counsel did not call any rebuttal witnesses.

The issues[4] to be determined in this Hearing Officer Determination are:

**Issue 1:** Whether Respondent denied Student a FAPE by placing Student, who is intellectually gifted but limited in accessing general education by his emotional disturbance, in (a) a Specific Learning Support ("SLS") program which is designed for children with specific learning disabilities, which Student did not have, and/or (b) a Behavior & Education Support ("BES") program in which he was placed with peers who were all a year ahead of him, causing behavioral issues.

**Issue 2:** Whether Respondent denied Student a FAPE by failing to provide an appropriate IEP requiring a full-time out of general education setting with advanced programming, where Student's IEP team agreed that he needed advanced academics to avoid behavior problems due to being bored, but Student could not take Advanced Placement classes or University of the District of Columbia ("UDC") classes for college credit without reducing the service hours on his IEP.

Petitioner seeks the following relief:

1. A finding that Student was denied a FAPE.
2. DCPS shall place Student in an appropriate placement that is sufficiently restrictive and also sufficiently advanced academically.
3. DCPS shall provide or fund appropriate compensatory education[5] to remedy any denial of FAPE.

---

[4] Petitioner also included an Americans with Disabilities Act ("ADA") claim in her due process complaint, which was dismissed without prejudice in the Prehearing Order on 3/11/16.

[5] With regard to the request for compensatory education, Petitioner's counsel had been put on notice during the Prehearing Conference that Petitioner must introduce evidence supporting the requested compensatory education, including evidence of specific educational deficits resulting from Student's alleged denial of FAPE and the specific compensatory measures needed to best correct those deficits, i.e., to elevate Student to the approximate position Student would have enjoyed had Student not suffered the alleged denial of FAPE. Respondent was put on notice to be prepared to introduce evidence contravening the requested compensatory education in the event a denial of FAPE is found.

4. Any other relief that is just and appropriate.

An oral opening statement was made by Petitioner's counsel and waived by Respondent's counsel. Oral closing statements were made by both Petitioner's counsel and Respondent's counsel. The parties were permitted to submit legal citations after the hearing, which Respondent did on 3/28/16.

## Findings of Fact

After considering all the evidence, as well as the arguments of both counsel, the Findings of Fact[6] are as follows:

1. Student is a resident of the District of Columbia; Petitioner is Student's Parent.[7] Student is *Age* and in *Grade*.[8] Student began at Public School in August 2015 at the beginning of 2015/16.[9] In 2014/15, Student completed the school year at Prior School.[10]

2. Student is classified as having Emotional Disturbance ("ED"), which leads to frequent emotional dysregulation so he is not available for learning.[11] Student's current IEP (dated 10/8/15) provides for 26.5 hours/week of specialized instruction outside general education and states that Student needs a self-contained environment to succeed academically and behaviorally.[12] Public School is currently attempting to conduct new Psychological and Educational assessments to determine what is best for Student and how to provide the most appropriate level of services, although Student is not yet willing to take the necessary tests.[13]

3. Behavior. Student is in frequent conflict with peers and teachers, with physical altercations 2-3 times per week.[14] Student has been aggressive with both staff and peers, using a rope, choking a student, punching a female student, breaking a laptop, and requiring

---

[6] Footnotes in these Findings of Fact refer to the sworn testimony of the witness indicated or to an exhibit admitted into evidence. To the extent that the Hearing Officer has declined to base a finding of fact on a witness's testimony that goes to the heart of the issue(s) under consideration, or has chosen to base a finding of fact on the testimony of one witness when another witness gave contradictory testimony on the same issue, the Hearing Officer has taken such action based on the Hearing Officer's determinations of the credibility and/or lack of credibility of the witness(es) involved.
[7] Parent.
[8] *Id.*
[9] Vice President; Parent. All dates in the format "2015/16" refer to school years.
[10] Parent.
[11] P2-1,5.
[12] P2-7,8.
[13] Vice President; R7-1 (consent to evaluate signed by Parent on 2/19/16); R8-1 (Prior Written Notice).
[14] P2-5.

police to restrain him, among other incidents, including the day before the due process hearing when he had an altercation with another student in the principal's office in Parent's presence.[15] Some of Student's behavior problems are the result of not taking his medication.[16] Parent is cooperative about bringing his medication to school if he forgets it.[17] But Student still has outbursts even when on his medication.[18] His outbursts have decreased in number since last Fall, but are more explosive and extreme.[19]

4. A BIP was created for Student on 11/24/15 to try to address his physical and verbal aggression, disrespect of authority, desire to lose control, and enjoyment of negative behaviors.[20] An earlier FBA indicated that Student's negative behaviors occurred in multiple locations (seven listed classes, plus lunchroom and after school) and throughout the day ("midday, afternoon, after school, continuously, morning, lunch period").[21] A Student Safety Contract was signed with Student on 12/16/15, in which he agreed to show consideration and prevent aggression.[22] The BIP and Safety Contract were part of Public School's efforts to address Student's behavior, but behavior problems have continued.[23]

5. Vice President has regular – often daily – discussions with Student's social worker about what is working for Student and what is not.[24] Student is making gradual progress in his behavioral challenges and progressing in meeting his emotional, social and behavioral development goals.[25] Student is slowly developing a positive relationship with his team at Public School, although it all depends on the day and how Student is feeling.[26] Student sometimes locates Vice President wherever she is in the building to advocate for himself and tell her when he is not in a "good place."[27] Public School is working with Student, but his negative behaviors continue.[28]

---

[15] Vice President; P6-1 (police called because Student fighting on 9/17/15); P9-1 (10/20/15 incident caused injury, Student picked up and threatened to throw teacher's laptop); P11-14 (11/18/15 incident); P14-2 (incidents on 11/18/15 and 11/20/15 leading to manifestation determination review); P13-1 (11/23/15 incident); P12-1 (further incident on 11/23/15); P15-1 (initial incident on 12/1/15); P19-1,2 (fighting with female student on 12/1/15); P21-1 (jumped on teacher, causing teacher to hit his head); P23-1 (physical altercation on 3/18/16).
[16] Parent; Vice President.
[17] Vice President.
[18] *Id.*
[19] Vice President; P5-2.
[20] P3-1.
[21] P4-2.
[22] R6-1,2.
[23] Parent; Vice President.
[24] Vice President.
[25] P11-1,12,13.
[26] Vice President.
[27] *Id.*
[28] Parent.

6. Programs. In 2015/16, Student was initially put in an SLS program in his grade where he enjoyed a "honeymoon" period, with no incidents during the first month of school.[29] The SLS program was suitable for Student until he began having fights with another student and was moved to the BES program, where he had a behavior technician to work with him, but has not acted better.[30] In the BES program Student is with six other students who are a grade ahead.[31]

7. Student's SLS and BES programs had the same special education teachers, and Student's content remained the same.[32] In the BES program, since the other six students are a year ahead Student gets personalized attention, so his work can easily be adjusted and made more challenging for him.[33]

8. Student is bright and learns quickly, so can become bored and leave class or have outbursts.[34] Student acts out many other times as well and has infractions in hallways, the cafeteria, and the gym, where there is no question of his academic content boring him.[35]

9. Parent would like Student to be in Advanced Placement ("AP") classes, but was told that the hours on Student's IEP would have to be reduced for him to attend AP classes.[36] Student stated that he was getting sufficiently rigorous course work in English and Biology.[37] Student had fewer behavioral challenges in the classes that he found rigorous.[38]

10. Student wants to be in general education classes, but his IEP team agreed on 10/8/15 that he wasn't ready yet.[39] Both Parent and Vice President credibly testified that Student was not ready for general education classes, although Parent insisted that he was nonetheless "ready for AP general education."[40]

11. Academic Ability and Grades. Student is considered to be performing at or above grade level.[41] Student's Woodcock-Johnson III Tests of Achievement ("WJ-III") on 2/12/15 indicated that Student was almost one year ahead in Broad Math and a year and a half ahead in Math Calculation Skills; however, he was two years behind in Broad Reading, over two years behind in Broad Written Language, and a full three years behind in Written

---

[29] Vice President.
[30] *Id.*
[31] Vice President; Community Support Worker.
[32] Vice President.
[33] *Id.*
[34] Parent; Community Support Worker.
[35] Vice President.
[36] Parent.
[37] Community Support Worker; Parent.
[38] Community Support Worker.
[39] P8-1
[40] Parent; Vice President.
[41] Parent; P5-2.

Expression.[42] The WJ-III concluded that Student's performance is "average in broad reading, mathematics, math calculation skills, and written language; and low average in written expression."[43]

12. Student's current IEP indicates that he needs extended time to read passages on grade level; he is only able to write five or more sentences; and his spelling skills and written fluency are below the level targeted in a grade-level general education setting.[44]

13. Student's grades were erratic during the first two terms of 2015/16, with two "As" and two "Cs" in the first term and one "A" and three "Cs" in the second term; but the first term "As" both dropped to "Cs" and one of the first term "Cs" became the second term "A."[45] Student can do his work when he chooses to.[46]

14. <u>Options for More Rigorous Academics</u>. Public School has informally discussed with Parent the possibility of Student applying to UDC's early college program or taking AP English or AP Biology.[47]

15. UDC offers early college courses on a semester basis to which Vice President encouraged Student to apply.[48] The current semester is well under way, but Student could apply for 2016/17, which is the time most students in his grade would begin taking such courses.[49] Public School does not have any control over the UDC courses or provide support for its students in the UDC courses.[50]

16. Public School discussed AP Biology with Parent, which is a possibility for the future, once Student can be supported by a special education teacher in an inclusion classroom, so he could learn alongside his general education peers.[51] AP Biology is a year-long course that culminates with the AP Biology exam in May.[52] Student would need to begin the AP course in August; by this point in the school year the course is ramping down and focusing on the upcoming exam.[53]

---

[42] R1-1.
[43] R1-3.
[44] P2-3,4.
[45] R4-2.
[46] Vice President.
[47] P22-1; Parent.
[48] Vice President.
[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*

17. Student would need to complete Biology before attempting AP Biology.[54] Student's reading and writing are also not strong enough for AP Biology now, so it is not simply a matter of providing behavior supports outside general education.[55] It would not be possible to teach Student the content of AP Biology outside general education classes because of the need for taking labs in general education.[56] The College Board doesn't allow modification of the content of AP courses.[57]

18. Math is a relative strength for Student, but he ranks toward the bottom of his grade in Math.[58] Student initially said he was not challenged in Math, so Vice President worked with his teacher to challenge Student academically, by adding sites such as Agile Mind to his coursework, and using the textbook and workbook more than before.[59] Student would not be able to take AP Calculus without first taking several prerequisites.[60]

19. Public School works to prepare all its students to be successful in college.[61] Public School is an "AP for All" school and expects all its students – including special education and English Language Learner students – to take AP Language and AP Literature during their last two years at Public School.[62]

## Conclusions of Law

Based on the Findings of Fact above, the arguments of counsel, as well as this Hearing Officer's own legal research, the Conclusions of Law are as follows:

The overall purpose of the IDEA is to ensure that "all children with disabilities have available to them a free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). *See Boose v. Dist. of Columbia*, 786 F.3d 1054, 1056 (D.C. Cir. 2015) (the IDEA "aims to ensure that every child has a meaningful opportunity to benefit from public education").

"[T]o further Congress' ambitious goals for the IDEA, the Supreme Court has focused on the centrality of the IEP as 'the centerpiece of the statute's education delivery system for disabled children.'" *Harris v. Dist. of Columbia*, 561 F. Supp. 2d 63, 67 (D.D.C. 2008), *quoting Honig v. Doe*, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988).

---

[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] Community Support Worker; Vice President.
[61] Vice President.
[62] *Id.*

Once a child who may need special education services is identified and found eligible, DCPS must devise an IEP, mapping out specific educational goals and requirements in light of the child's disabilities and matching the child with a school capable of fulfilling those needs. *See* 20 U.S.C. §§ 1412(a)(4), 1414(d), 1401(a)(14); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369, 105 S. Ct. 1996, 2002, 85 L. Ed. 2d 385 (1985); *Jenkins v. Squillacote*, 935 F.2d 303, 304 (D.C. Cir. 1991); *Dist. of Columbia v. Doe*, 611 F.3d 888, 892 n.5 (D.C. Cir. 2010).

As discussed below, the Act's FAPE requirement is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Smith v. Dist. of Columbia*, 846 F. Supp. 2d 197, 202 (D.D.C. 2012), *citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 203, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). The IDEA imposes no additional requirement that the services so provided be sufficient to maximize each child's potential. *Rowley*, 458 U.S. at 198. Congress, however, "did not intend that a school system could discharge its duty under the [Act] by providing a program that produces some minimal academic advancement, no matter how trivial." *Hall ex rel. Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 636 (4th Cir. 1985).

In addition, DCPS must ensure that to the maximum extent appropriate, children with disabilities are educated with children who are nondisabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 34 C.F.R. 300.114.

A Hearing Officer's determination of whether a child received a FAPE must be based on substantive grounds. In matters alleging a procedural violation, a Hearing Officer may find that a child did not receive a FAPE only if the procedural inadequacies (i) impeded the child's right to a FAPE; (ii) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) caused a deprivation of educational benefit. 34 C.F.R. 300.513(a). In other words, an IDEA claim is viable only if those procedural violations affected the child's *substantive* rights.

"Based solely upon evidence presented at the hearing, an impartial hearing officer shall determine whether the party seeking relief presented sufficient evidence to meet the burden of proof that the action and/or inaction or proposed placement is inadequate or adequate to provide the student with a FAPE." 5-E D.C.M.R. § 3030.3. The burden of proof is on the party seeking relief. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62, 126 S. Ct. 528, 537, 163 L. Ed. 2d 387 (2005).

**Issue 1:** *Whether Respondent denied Student a FAPE by placing Student, who is intellectually gifted but limited in accessing general education by his emotional disturbance, in (a) a Specific Learning Support ("SLS") program which is designed for children with specific learning disabilities, which Student did not have, and/or (b) a Behavior &*

*Education Support ("BES") program in which he was placed with peers who were all a year ahead of him, causing behavioral issues.*

Petitioner failed to meet her burden of proving a denial of a FAPE for Student as a result of Respondent placing Student in the SLS program or the BES program. Each program was sufficient to implement Student's IEP and provide a FAPE, and academically he was reasonably successful in each. Student began 2015/16 in the SLS program, where he initially did fine for about a month, until serious conflict arose with another student, after which he was moved to the BES program in order to have the additional support of a behavior technician.

Petitioner's specific concern with the SLS program was that it focused on children with specific learning disabilities, while Student was classified as having ED and not a learning disability. Petitioner's concern with the BES program was that Student was placed with six other students who were a grade ahead of him. Student's IEP, however, simply calls for him to be out of general education for 26.5 hours/week in a self-contained classroom, which both the SLS and BES programs satisfy. Certainly there is no requirement for school districts to place only students with similar disabilities together or to ensure that all students in a classroom are in the same grade, when the specialized instruction is differentiated. A student's identified needs, not his disability category, are to determine the services that must be provided to him. *Letter to Anonymous*, 48 IDELR 16 (OSEP 2006); *Heather S. v. State of Wis.*, 125 F.3d 1045, 1055 (7th Cir. 1997) (the "IDEA charges the school with the responsibility of developing an appropriate education, not with coming up with a proper label"); *M.M. v. Lafayette Sch. Dist.*, 2012 WL 398773, at 17 (N.D. Cal. 2012), *aff'd in part, rev'd in part on other grounds and remanded,* 767 F.3d 842 (9th Cir. 2014).

A classroom of students with differing intellectual, social, and behavioral needs may satisfy the IDEA as long as "a core group was operating at an intellectual level sufficiently comparable" to Student's to permit him to continue making academic progress. *S.F. v. New York City Dept. of Educ.*, 2011 WL 5419847, at 17 (S.D.N.Y. 2011), *quoting Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 133-34 (2d Cir. 1998). Here, Petitioner did not assert that Student's classmates were at a notably different intellectual level. While Petitioner did object to Student being in a class with peers a grade ahead, she also sought more advanced academic coursework for Student, suggesting that the program's intellectual level would not impede Student. In short, "[u]niformity of needs" in a classroom is not required; nor does the IDEA "require school districts to provide the best possible placement, only an appropriate education which allows the child to receive a meaningful educational benefit." *Id., citing Rowley*, 458 U.S. at 199.

Here, Vice President convincingly testified that Student can do his academic work when he chooses to. Student has performed reasonably well academically in 2015/16, with two "As" and two "Cs" in the first term and one "A" and three "Cs" in the second term. Student's efforts were inconsistent, as his first term "As" both dropped to "Cs" and one of his first term "Cs" became a second term "A." *See K.S. v. Dist. of Columbia*, 962 F. Supp. 2d 216, 221 (D.D.C. 2013) (academic success is an important factor), *quoting Roark ex rel.*

*Roark v. Dist. of Columbia,* 460 F. Supp. 2d 32, 44 (D.D.C. 2006). Public School personnel are diligently working with Student, with a BIP created for Student on 11/24/15 to try to address his physical and verbal aggression, and a Student Safety Contract signed with Student on 12/16/15, in which he agreed to show consideration and prevent aggression, along with Vice President's regular communications with social worker to try to address Student's needs. Taken as a whole, this Hearing Officer is persuaded that Student has received an appropriate education with meaningful educational benefit in his programs at Public School.

**Issue 2:** *Whether Respondent denied Student a FAPE by failing to provide an appropriate IEP requiring a full-time out of general education setting with advanced programming, where Student's IEP team agreed that he needed advanced academics to avoid behavior problems due to being bored, but Student could not take Advanced Placement classes or UDC classes for college credit without reducing the service hours on his IEP.*

Petitioner also failed to meet her burden of proving a denial of a FAPE for Student based on Public School not providing AP or college classes. Petitioner asserted that such advanced programming was required to adequately challenge Student and keep him from getting bored and acting out. However, as discussed below, Student's behavior issues are not simply a matter of being bored in his classes and, in any case, more challenging coursework could be and was being provided apart from the specific classes sought by Petitioner which were not viable at this time.

While Student is no doubt bored in some of his classes, it is undisputed that he has behavior issues throughout the day, in class and out. Student had infractions in hallways, in the cafeteria, and in the gym, where it could not be a matter of his academic courses boring him. An earlier FBA summed up when Student's behavioral problems occur as "midday, afternoon, after school, continuously, morning, [and] lunch period." Although academic boredom may be just a small part of his behavior issues, to the extent that more intellectual challenge may be helpful as a practical matter, Public School has been working to increase the level of Student's academic work. For instance, Student initially said he was not challenged in Math, so Vice President worked with his teacher to challenge and push Student academically, by adding sites such as Agile Mind to his coursework, and using the textbook and workbook more than before. Since Student receives much one-on-one attention in his BES program, where the other students are a year ahead, Public School can readily increase the academic level for Student as needed.

As a legal matter, however, Public School is required to do no more than provide a "basic floor of opportunity" for Student. *Rowley,* 458 U.S. at 201, 102 S. Ct. 3034. As discussed above and recently explained by the U.S. Court of Appeals for the District of Columbia Circuit in *Leggett v. Dist. of Columbia,* 793 F.3d 59, 70 (D.C. Cir. 2015):

> We begin with what is undisputed: under the Supreme Court's decision in *Rowley,* a public school district need not guarantee the best possible education or even a "potential-maximizing" one. 458 U.S. at 197 n. 21, 102 S. Ct. 3034. Instead, an IEP

> is generally “proper under the Act” if “reasonably calculated to enable the child to receive educational benefits.” *Id.* at 207, 102 S. Ct. 3034; *see also Branham v. District of Columbia,* 427 F.3d 7, 9 (D.C. Cir. 2005) (IEP need not maximize the child’s development as long as it “provide[s] some [educational] benefit”) (internal quotation marks omitted).

Applying this legal standard, the undersigned concludes that the AP and college courses sought by Petitioner are not required in this case to permit Student to receive educational benefit from his instruction. Nonetheless, Public School went beyond the minimum. Even though it has nothing to do with the college courses, Public School has encouraged Student to consider applying for UDC courses in 2016/17, which generally would be the first year that Student’s peers in his grade would apply. As for AP, Vice President credibly testified that Public School expects all its students, including those in special education, to take AP Language and AP Literature classes in their final two years in Public School. Further, it may be possible for Student to take AP Biology in the future, although there are currently weaknesses in Student’s reading and writing, and he must first complete regular Biology. Public School explained that the AP course could not be offered outside general education due to the need for general education labs and the prohibition by the College Board in modifying AP course content.[63] In addition, Public School noted the multiple prerequisites for AP Calculus. Thus, even if AP classes were otherwise necessary to provide a basic floor of opportunity, it would be premature to consider them at this time.

Here, as the court found in *D.S. v. Hawaii*, 2011 WL 6819060 at 10 (D. Haw. 2011), “Mother has sought, as all good parents do, to secure the best services for her child. The role of the [decision-maker] in IDEA appeals, however, is not to determine whether an educational agency offered the best services, but whether the services offered confer the child with a meaningful benefit.” For the reasons discussed above, this Hearing Officer concludes that Student’s IEP is appropriate as he is receiving educational benefits at Public School in the absence of AP and college classes.

---

[63] Petitioner’s counsel emphasized a Dear Colleague letter from the Office for Civil Rights at the U.S. Department of Education dated 12/26/07 at P1-1,3, which states in part that “[p]articipation by a student with a disability in an accelerated class or program generally would be considered part of the regular education or the regular classes referenced in the Section 504 and the *IDEA* regulations.” The letter goes on to illustrate how an IEP requiring Braille materials in a regular education program would similarly require Braille in an advanced or accelerated class. *Id.* For Student here, this may mean that since Student’s current IEP requires full-time out of general education that Student would not be able to participate in an AP class any more than in regular education at this point.

Student does want to be in general education classes, but his IEP team agreed on 10/8/15 that he wasn’t ready yet. Parent and Vice President both credibly testified that Student was not ready for general education classes, although Parent insisted that he was nonetheless “ready for AP general education,” which somewhat damaged her credibility in the view of this Hearing Officer.

## ORDER

Petitioner has failed to meet her burden of proof on the issues in this case. Accordingly, **it is hereby ordered** that any and all claims and requests for relief are **dismissed with prejudice**.

**IT IS SO ORDERED.**

Dated in Caption

/s/ Keith Seat
Keith L. Seat, Esq.
Hearing Officer

## NOTICE OF RIGHT TO APPEAL

This is the final administrative decision in this matter. Any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within ninety (90) days from the date of the Hearing Officer Determination in accordance with 20 U.S.C. § 1415(i).

Copies to:

Counsel of Record (Appendix A, by email)
OSSE-SPED (due.process@dc.gov)
ODR (hearing.office@dc.gov)
Contact.resolution@dc.gov
CHO