**Columbia Heights EC (CHEC)**
TEL (202)939-7700 | checdc.org | Principal: Maria Tukeva
District of Columbia Public Schools

**CONFIDENTIAL**
Parent or guardian of
[redacted]
2918 S St SE
Washington, DC 20020

Grade 9 report card (term 1) printed on November 24, 2015 for:

[redacted]

Student ID: 9321513

**Homeroom Teacher: Estrado, J**

## Key areas of [redacted] progress

### [redacted] attendance:

**13 day(s) lost**

| | |
|---|---|
| Days unexcused: | 8 |
| Total days absent: | 13 |
| Tardy: | 6 |

**Reminder: If your student has 10 unexcused absences, the school is required by law to conduct a Student Support Team follow-up and submit information to Metropolitan Police Department.** Chronic truancy can hinder a student's progress and the school's ability to provide for his/her educational needs.

### [redacted] credit and course progress:

[redacted] is currently achieving a passing grade (and is averaging a passing grade) in all courses. That's a strong sign that [redacted]s going to earn enough credit for promotion to the next grade level at the end of the year. Please continue to support [redacted] to ensure that they keep their grades up and pass all courses.

### [redacted] Grade Point Average (GPA):

A GPA is an average of the points earned for each course, ranging from a 4.0 for an A to a 0 for an F. There are three types of GPA:

**2.92**

**Term GPA:** Includes only the current term marks, including marks for courses that students are still taking. Results are used for honor roll purposes.

| T1: 2.9250 | T2: | T3: | T4: |
|---|---|---|---|

**Year GPA:** Includes only final marks earned this academic year. Year GPA will very from term to term, depending on a student's schedule.

**Cumulative GPA:** Includes all final marks for courses taken in high school. Takes into account Advanced Placement (AP) and honors. Grades received in a course that a student has retaken for credit do not replace the original failing marks in the course.

### [redacted]s community service hours:

All students must complete Community Service hours, beginning in 9th grade. You will receive updates specific to [redacted] progress in the term 3 report card.

EXHIBIT
tabbles
R-3-1

Columbia Heights EC (CHEC) 9th grade report card (term 1, ending October 30, 2015 ) printed on November 24, 2015

[redacted] Student ID: 9321513 

**KEY:** Teachers assign letter grades of A-F to indicate the degree of achievement by a student of the content standards in each course.

| 0-63% | 64-66% | 67-69% | 70-72% | 73-76% | 77-79% | 80-82% | 83-86% | 87-89% | 90-92% | 93-100% |
|---|---|---|---|---|---|---|---|---|---|---|
| F (Fail) | D | D+ | C- | C | C+ | B- | B | B+ | A- | A |

| | | |
|---|---|---|
| N/A | Not Applicable | This course was not taught during the term indicated. |
| NE | No Exam | No final Exam was given. |
| NM | No Mark | No mark was entered at the time the report was printed. Contact your school for an update. |
| I | Incomplete | Indicates a missing project or assignment that will impact the grade. |

| | | |
|---|---|---|
| L | Late Entry | Student transferred to school mid-term. |
| M | Medical | Student had Medical Leave. |
| W | Withdrawal | The student dropped the course within three weeks of enrolling in it. |
| AUD | Audit | The student attends and participates in the course, but is not graded. Also: students who enroll too late in the term to receive a final mark. |

## [redacted] course marks and attendance:

| Course Title (Course Code, Section #) | Term 1 | Term 2 | Term 3 | Term 4 | Exam | Final | Credit Earned |
|---|---|---|---|---|---|---|---|
| Algebra I-A 1.0 (M23, Section 011) | C | | | | | | |
| Number of absences | 0 | | | | Total Absences This Year: 0 | | |
| TEACHER: Mizell, Kindra | Poor behavior. | | | | | | |
| Biology (S21, Section 019) | A | | | | | | |
| Number of absences | 6 | | | | Total Absences This Year: 6 | | |
| TEACHER: Estrado, Jezelle | Excellent initiative. | | | | | | |
| CHINESE I (L73, Section 004) | C | | | | | | |
| Number of absences | 10 | | | | Total Absences This Year: 10 | | |
| TEACHER: Wei, Wei | Excessive tardiness. Does not bring materials. Poor behavior. | | | | | | |
| English I (E03SC, Section 002) | A | | | | | | |
| Number of absences | 8 | | | | Total Absences This Year: 8 | | |
| TEACHER: Lee, Brittany | Pleasure to have in the class. | | | | | | |
| Algebra I-B 1.0 (M24, Section 011) | N/A | | | | | | |
| Number of absences | 0 | | | | Total Absences This Year: 0 | | |
| TEACHER: Mizell, Kindra | | | | | | | |
| CHINESE II (L74, Section 002) | N/A | | | | | | |
| Number of absences | 0 | | | | Total Absences This Year: 0 | | |
| TEACHER: Wei, Wei | | | | | | | |
| World Hist & Geo I: Middle Ages (HC5SC, Section 002) | N/A | | | | | | |
| Number of absences | 0 | | | | Total Absences This Year: 0 | | |
| TEACHER: Estrado, Jezelle | | | | | | | |

## Standardized assessment data:

### Scholastic Reading Inventory (SRI)

SRI is a test that helps understand a student's reading (lexile) level. A 9th grade reading level is lexile level 1000 or above. SRI results as of 2015-09-10 suggest that [redacted] was reading at lexile level 965, which is a 8th grade reading level. Regular reading practice at home helps students to progress. To find books at the right lexile level for [redacted] don't hesitate to reach out to your student's English teacher or visit www.scholastic.com/bookwizard.

## Let us know you received this report:

Please review [redacted] report card and ask your student to hand this slip to Estrado, J.

SIGN AND RETURN ______________________________

First Term 9th grade report card reviewed by parent or guardian of [redacted] [ID 9321513] at Columbia Heights EC (CHEC).

☐ I request a parent/teacher conference with ______________________

☐ Please call me at this number (_____)______________________

☐ Other feedback:

R 3 3

X______________________________ Date ____________

THIS PAGE WAS INTENTIONALLY LEFT BLANK

8-3-4

# Office Discipline Referral Form

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

**Date:** 12/01/2015

**Name of person referring (first and last):** Nastasia Burnette

**Student name (first and last):** [redacted]

**Location of incident:** A162 **Time of incident:** 2:30pm

**Briefly describe the specific behavior warranting referral** [redacted] was upset by the argument with a classmate. He and his classmate were separated: [redacted] staying in the room while the other party was removed. He tried to get out of the classroom while I stood in front of the door by pulling my arms. He was moved away and was directed to keep his hands off of me and redirected to stay inside of the classroom. [redacted] knocked books from the book case, desks, and snatched paper work down from the walls. Ms. Settles came to retrieve [redacted] and he did exit the room.

**Please list any others involved in incident as necessary (list names)**

Peers Staff Teacher Other:

Name(s): Ms. Settles

| Did you attempt any of the following classroom strategies before referring? | |
|---|---|
| Asked student to explain situation | Positive reinforcement for appropriate behavior |
| Changed seating | Presented both written and verbal directions |
| Coaching/met with student | Proximity to student |
| De-escalation strategy | Reduced distractions |
| Differentiated instruction/task | Verbal redirection (restate expectations) |
| Increased positive interactions with student | Other strategy: Call/text parent |
| Non-verbal attention/visual cue | |

**PLEASE COMPLETE AND SUBMIT TO PRINICPAL OR DESIGNATED DISCIPLINE PERSONNEL FOR YOUR SCHOOL**

**FOR ADMINISTRATIVE USE ONLY:**

**Date Received:** **Tier Behavior Code(s):**

**Action Taken:**

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

# Office Discipline Referral Form

**Date:** 12-01-2015

**Name of person referring (first and last):** Kaitlin Settle Athmer

**Student name (first and last):** [redacted]

**Location of incident:** A162, hallway, room across from Ms. Hinkson's office **Time of incident:** 2:40-2:55pm

**Briefly describe the specific behavior warranting referral:** [redacted] arrived late to class and out of uniform (with hoodie on). He disregarded my direction to pick up his folder from the desk and starting making comments as he walked to the back of the room to find a seat. He also did not respond to directions from the behavior tech. The folder and paper assignment were given to him and he went in and out of focusing. He kept engaging in chatter with another student next to him. He responded briefly to redirection from the tech when she adjusted her proximity and sat next to him. 80% of the other students were physically and verbally engaged in the activity (one student with head down, and other student interacting in comments with [redacted] and [redacted] kept bringing up random comments, one like "don't Chinese people use that knife in their hand and the second you touch it you get cut. That shit is nice." At different times, [redacted] would engage for a second or two, and then make another random comment, seemingly to try to get a rise out of classmates. Most classmates ignored his comments, aside from the one in closest proximity to him. They were assigned an activity to help plan out their project. [redacted] and another student agreed to be partners. But [redacted] got up and started walking around the room. He went over to one student and started rubbing his head, to another student he was whispering things to him with his hands on his desk leaning over him. He walked by another student, [redacted] and she didn't like him getting close to her, and he made some comment to her, so she said something back as [redacted] was sitting down (they have a history of getting at it). With this, and I can't remember the words exchanged between them, but it was lots of [redacted] calling her a "bitch" and [redacted] calling him a "whore" back. [redacted] made a lot of comments about [redacted] not having enough money to buy new shoes, and he yelled more about her being a "fucking bitch." There was a lot of talk about their mothers, [redacted] saying something like "at least my mother didn't fuck the...." as Ms. B tried to remove him from class. That didn't work, as he kept walking around the classroom to try to get closer to [redacted] Ms. B and myself were in their vacinity and physically in between the two so they didn't get closer to each other. They cotinued to yell things back and forth, [redacted] threatening "I'll hit you bitch" and [redacted] responding "Go ahead whore, I'll hit you back". I was eventually able to get [redacted] out of the room, as she continued to shout expletives at him as we walked into the hallway. Ms. B was able to keep [redacted] in the classroom as I took [redacted] to the room across from Ms. Hinkson's office. I returned to the classroom a minute or two later, after texting Ms. Campbell, Ms. Hinkson, Ms. Estrado, and Ms. Saxon to see if they could provide assistance. As I was approaching the door, I saw [redacted] ripping the bulletin board boarder off the wall and tearing the paper off the board as well. When Ms. B tried to move out of the way of the swing of the door so I could enter, [redacted] shoved/pulled her out of the way to push around her and pushed through me to enter the hallway. I walked behind him, prompting him to make a better choice and we could walk somewhere else, and he said, "I know where you took her. I'm going to fuck her up. I'll cut through there [career center] to get to her". But as I was on that side of him, he kept walking. He picked up speed and I tried to keep the entrance door to the office closed [Bell hallway by bathrooms], but he shoved me with his side body out of the way to fling open the door and ran into the office suite hallway. I caught up with him again to try to warn [redacted] keep the door closed, but he again shoved me out of the way to get into the room. As soon as he got in there, he started punching [redacted] as she was sitting down. Then she got up and they were punching each other and moving around the room. I tried to see if I could maybe get [redacted] out but they were tangled up. As they were tangled and moving around, I got shoved with their bodies. I opened the door to call for help. That's when [redacted] and [redacted] were free for a second and [redacted] grabbed my hand/arm to come out of the room. She stood in the hallway as I closed the door behind me with [redacted] in the room, and other teachers/ adults/ security/ administrators came. *I'm not sure where in the sequence of things with [redacted] this happened, but I have a scrape on my left ankle about 3/4 inches long and a couple dots/little scraps above it. This might have been from [redacted] shoe when he was brushing by me/stepping around me to get through doors and to [redacted] It was burning a bit at first, but it feels better now. I'll keep an eye on it.

**Please list any others involved in incident as necessary (list names)**

☒ Peers ☒ Staff ☒ Teacher ☐ Other:

Name(s): Ms. Burnette

| **Did you attempt any of the following classroom strategies before referring?** | |
|---|---|
| ☒ Asked student to explain situation | ☒ Positive reinforcement for appropriate behavior |
| ☒ Changed seating | ☒ Presented both written and verbal directions |
| ☐ Coaching/met with student | ☒ Proximity to student |
| ☒ De-escalation strategy | ☐ Reduced distractions |
| ☒ Differentiated instruction/task | ☒ Verbal redirection (restate expectations) |
| ☒ Increased positive interactions with student | ☐ Other strategy: |
| ☒ Non-verbal attention/visual cue | |

**PLEASE COMPLETE AND SUBMIT TO PRINICPAL OR DESIGNATED DISCIPLINE PERSONNEL FOR YOUR SCHOOL**

**FOR ADMINISTRATIVE USE ONLY:**

**Date Received:** **Tier Behavior Code(s):**

**Action Taken:**

DISTRICT OF COLUMBIA

# Office Discipline Referral Form

Date: 12-01-2015

Name of person referring (first and last): Brittany Lee

Student name (first and last): [redacted]

Location of incident: C329

Time of Incident: 9:11 AM

**Briefly describe the specific behavior warranting referral:** [redacted] Had trouble starting his Do Now but eventually engaged; he still could not refrain from profanity and remaining on task without distracting others. The following was said "I just got top from that Bitch," "Fuck" (numerous times), "Fuck that," "This crossword puzzle is fucked." At this point all of his letters towards EARNIT were eliminated. He refused redirection and all behavioral strategies implemented by Ms. B and myself. At this time he then went around the classroom writing profanity on curricular documents, the wall instructions, and the white board. (Pictures are attached) While Ms. B and I were trying to redirect his behavior he called me a "bitch" and as he was walking out of the classroom he stated "would you like to be called a cracker instead." He walked out at 9:25 AM; returned at 9:39 and sat at the conference rotation (refused to reengage) and continued to write/draw profanities on curricular materials. He eventually walked out again at 9:45 AM refusing to redirect and engage. His mother is aware of the situation as Ms. B called at 9:26 AM and spoke to her (texted at 9:46 AM too).

**Please list any others involved in incident as necessary (list names)**

☐ Peers ☒ Staff ☒ Teacher ☐ Other:

Name(s): Ms. Burnette

| Did you attempt any of the following classroom strategies before referring? | |
|---|---|
| ☒ Asked student to explain situation | ☒ Positive reinforcement for appropriate behavior |
| ☒ Changed seating | ☐ Presented both written and verbal directions |
| ☐ Coaching/met with student | ☒ Proximity to student |
| ☒ De-escalation strategy | ☒ Reduced distractions |
| ☒ Differentiated instruction/task | ☒ Verbal redirection (restate expectations) |
| ☒ Increased positive interactions with student | ☐ Other strategy: |
| ☒ Non-verbal attention/visual cue | |

**PLEASE COMPLETE AND SUBMIT TO PRINICPAL OR DESIGNATED DISCIPLINE PERSONNEL FOR YOUR SCHOOL**

**FOR ADMINISTRATIVE USE ONLY:**

**Date Received:**

**Tier Behavior Code(s):**

**Action Taken:**

P-17-1

DISTRICT OF COLUMBIA PUBLIC SCHOOLS

REQUIRED: LONG-TERM SUSPENSION & EXPULSION NON-EMERGENCY

# Notice of Proposed Disciplinary Action

| Student Information | Parent/Guardian Information |
|---|---|
| Name: [redacted]<br>Student ID: 9321513<br>Date of Birth: [redacted]<br>Grade: 9 | Name: Parent/Guardian of [redacted]<br>Address: 2918 S St SE Washington DC 20020<br>Home phone: 202-763-2340 Work Phone:<br>Cell phone: Other Contact #:<br>Email: |
| School Name: Columbia Heights Education Campus<br>Authorizing School Official: Maria Tukeva<br>Title: Principal<br>Primary Contact Number: 202-939-7700 | Date of Incident: 12/01/2015<br>Time of Incident: 2:30PM<br>Exact Location: Classroom |

12/03/2015

Dear Parent/Guardian of [redacted]

I met with [redacted] to discuss an incident on 12/01/2015 involving Fighting which creates substantial risk of or results in minor injury,
4.09 (DCMR- §B2502.1).

As a result of the conference, I have determined that he is responsible for this conduct. I am proposing a Off-site Long-Term Suspension for 36 days. (DCMR- §B2505.1)

At this point, [redacted] should continue to attend school until the Instructional Superintendent's office, as designated by the Chancellor, has reviewed all information relating to this matter. The Instructional Superintendent will either authorize or modify the proposed disciplinary action (DCMR - §B2505.6). If a Off-site Long-Term Suspension is upheld, the Office of Youth Engagement will contact you to schedule a hearing.

If you need further clarification regarding this issue, please contact my office at 202-939-7700.
Thank you for your attention to this matter.

Sincerely,

Maria Tukeva
Principal
202-939-7700

DISTRICT OF COLUMBIA

REQUIRED FOR ALL LETTERS

# Parent/Guardian and Student Rights

You have the right to examine your student's records and any official report of the incident prior to the imposition of this disciplinary action.

## Appeals

Appeals can be made orally or in writing. Appeals made orally shall be put in writing by the DCPS employee receiving the request. Appeals may be made by telephone if necessary due to health, work or childcare. The student or parent may present evidence and ask witnesses to speak.

→ Short-Term (In-school and Off-site) Suspensions may be appealed to the school's Principal.
→ Medium-Term Suspensions may be appealed to the school's Instructional Superintendent.
Appeals must be made no later than two (2) school days after receiving notification of the disciplinary action and may be made prior to receiving this notice. The Principal or Instructional Superintendent will make a final decision within one (1) school day of the conference.

→ Long-Term Suspensions may be appealed to the head of the Office of Youth Engagement.
→ Expulsions may be appealed to the Chancellor.
Appeals must be made no later than five (5) school days after receiving notification of the disciplinary action. A conference will be scheduled within three (3) school days of receiving the appeal request. The head of the Office of Youth Engagement or the Chancellor will make a final decision within two (2) school days of the conference.

## Hearings

→ In the case of Long-Term Suspensions and Expulsions, you will be contacted by the Office of Youth Engagement to schedule a hearing.

Hearings will be held within four (4) days of your receiving this notice. After being contacted by the Office of Youth Engagement, you will receive a written notice indicating the date, time and location of the hearing. If necessary, you may postpone a hearing up to five days in order to prepare or accommodate the schedules of necessary parties. Hearings are closed to the public, but you may request an open hearing. The student is entitled to have a representative or legal counsel, though it is not required. The student (or parent or representative) may question any witness or documentary evidence. You may present any testimony or documentary evidence and call witnesses relevant to the case, including any school officials involved. A hearing officer will conduct the hearing in a fair and orderly manner and submit his or her recommendation to the Instructional Superintendent (for Long-Term Suspensions) or the head of the Office of Youth Engagement (for Expulsions) within one (1) day.

For additional information on hearings, please contact the Office of Youth Engagement at (202) 939-3618. Full listing of procedures regarding disciplinary actions are outlined in Chapter 25 in DC Municipal Regulations, available on the DCPS website.

**Mail this record - in its entirety - to the parent by email, certified mail or hand-delivered mail with a signature no later than 1 school day after the incident.**

**Notice of non-discrimination.** In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Official Code §§ 2-1401.01 et seq. (Act), the District of Columbia does not discriminate on the basis of actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, or place of residence or business. Sexual harassment is a form of sex discrimination which is prohibited by the Act. In addition, harassment based on any of the above protected categories is prohibited by the Act. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action. The following office has been designated to handle inquiries regarding non-discrimination policies: Equal Employment Opportunity Office, District of Columbia Public Schools,1200 First Street, NE, Washington, DC 20002.

# GOVERNMENT OF THE DISTRICT OF COLUMBIA

**Office of Administrative Hearings** **District of Columbia Public Schools**

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

# DCPS STUDENT DISCIPLINE HEARINGS

Overview of DCPS Student Discipline Policy (DCMR Chapter 25)
It is the policy of DC Public Schools that a safe environment conducive to learning shall be maintained. DCPS shall provide students, families, and staff with clear expectations and rules for appropriate school behavior. These rules must balance the responsibilities and rights of individuals and the responsibilities and rights of the school community. When a school proposes a long-term suspension or expulsion for a student, the student has the right to a hearing by an independent hearing officer. Student Discipline hearings pursuant to Title V of the District of Columbia Municipal Regulations (DCMR) Chapter B25, are conducted by Administrative Law Judges in the Office of Administrative Hearings (OAH).

Location: Office of Administrative Hearings (OAH)
Suite 450 North
441 Fourth Street, NW
Washington DC 20001-2714
Directly above the Judiciary Square Metro stop on the Red Line.

Transportation:
Street parking is extremely limited. Public transportation is strongly recommended.

Arrival:
Hearings will start on time. Please arrive at the building at least 15 minutes before the scheduled hearing time. Adults must have photo identification to enter the building. Students under the age of 18 will not need photo identification. When you arrive at Suite 450, a display board will list the location of the hearing (look for the initials of the student and the name of the student's school to find the room number).

What if I am running late?
If you are running late or have an emergency at the time of the hearing, please call OAH at (202) 442-9094.

What if I need to reschedule?
You have the right to request a postponement for up to five days. Please contact DCPS's Office of Youth Engagement at (202) 939 -3618 or email the Hearing Scheduler at oye.sdschearings@dc.gov.

What if I do not show up for the hearing?
The hearing will go forward as scheduled and the school has the responsibility to prove the facts of the case.

What is the Office of Administrative Hearings?
The District of Columbia Office of Administrative Hearings (OAH) is an administrative court with 33 Administrative Law Judges (ALJ) that decide contested cases from more than 40 District agencies, boards, and commissions. The independent agency is a neutral, impartial tribunal that holds hearings and decides appeals from various agency decisions. OAH enhances the quality of life in our City by providing residents with a fair, efficient, and effective system to manage and resolve administrative litigation arising under District of Columbia law.

How do I obtain a copy of the disciplinary record of the incident?
Please contact your school administrator and ask for all the information in the Student Behavior Tracker (SBT) with regard to the incident.

How do I obtain an interpreter?
You have the right to an interpreter in your primary language, including sign language. Please make this request at the time the hearing is scheduled by the DCPS Office of Youth Engagement. Questions and requests can also be directed to the Hearing Scheduler, DCPS Office of Youth Engagement (202) 939-3618 or email oye.sdschearings@dc.gov.

What should I expect at the hearing?
DCPS will provide a summary of the student discipline incident and provide an explanation for why the particular disciplinary measure has been recommended. All witnesses providing testimony will do so under oath which means you will be sworn in and asked to affirm that you will tell the truth. You can expect to be asked questions by DCPS officials, your representative, and the Judge.

The burden of proof is on DCPS, which means DCPS must prove by a *preponderance of the evidence (more likely than not),* that the student committed the infraction and violated a DCPS rule or policy. DCPS will be expected to present their case first. You will have an opportunity to be fully heard.

What happens after the hearing?
Within one school day of the hearing, the Judge will issue "Findings of Fact and Conclusions of Law" that will be provided to DCPS. Based on those findings, within 24 hours, DCPS will issue a Notice of Final Disciplinary Action. Both the Findings of Fact and the Notice of Final Disciplinary Action will be mailed to the most current address available for the student.

How do I obtain a copy of the hearing recording?
All hearings will be digitally recorded. You have the right to request a copy of the audio recording of the hearing which will be provided on a CD. Requests must be in writing and in person because identification is required. Forms to request audio recordings are available at OAH and at DCPS' Office of Youth Engagement. There is no cost for families or DCPS.

Students Have the Following Rights at the Hearing:

- The right to be represented by a parent, another representative, or by a lawyer. A student also has the right to represent himself or herself;
- The right to testify and explain your position to the Administrative Law Judge (ALJ), bring witnesses to testify for you, and question witnesses called by DCPS (cross-examination);
- The right to submit documents, photographs, or other evidence that supports your case;
- If you wish to be represented by a lawyer, the lawyer must be a member of the District of Columbia Bar and must file a notice of appearance with OAH. Attorneys who are not members of the District of Columbia Bar shall file a motion to appear *pro hac vice* pursuant to 1 DCMR 2833.2; and,
- The right to privacy. Hearings are confidential and will be closed to the public unless the parent requests the hearing be open to the public. Other OAH staff, including interns, may be present in the hearing. The case record is also confidential and subject to the Family Educational Rights and Privacy Act (FERPA). Only school officials with legitimate educational interests, parents/guardians and "eligible students" will be permitted to review the case record. A record will be maintained of any person granted access to the case file. If the ALJ determines that the student did not violate a DCPS rule or policy, the Record will be sealed and no access granted.

## Hinkson, Resheeda A. (DCPS)

| | |
|---|---|
| **From:** | Hinkson, Resheeda A. (DCPS) |
| **Sent:** | Monday, December 07, 2015 8:11 AM |
| **To:** | Joseph Golinker |
| **Cc:** | Shawn Smith (shawnnsmith516@gmail.com), Charles Moran |
| **Subject:** | RE: 12/2/15 Suspension |
| **Attachments:** | [redacted] RPT_LONG-TERM_SUSPENSIONEXPULSION_NON-EMERGENCY_20151203_030844.pdf |

Good Morning all,

I am sorry for the delay in getting this information to you last Friday, our network was not working accurately and subsequently I was locked out of the system. Please see below the written statement from Ms. Settle concerning [redacted] behavior on 12/1/2015. I have also attached a copy of the proposed suspension report. I would like to schedule his MDR meeting on Wednesday December 9, 2015 at 2 pm. Please let me know if this time works for your schedule. Thanks

Ms. Settle's Statement: @ 2:40

[redacted] arrived late to class and out of uniform (with hoodie on). He disregarded my direction to pick up his folder from the desk and starting making comments as he walked to the back of the room to find a seat. He also did not respond to directions from the behavior tech. The folder and paper assignment were given to him and he went in and out of focusing. He kept engaging in chatter with another student next to him. He responded briefly to redirection from the tech when she adjusted her proximity and sat next to him. 80% of the other students were physically and verbally engaged in the activity (one student with head down, and other student interacting in comments with [redacted]), and [redacted] kept bringing up random comments, one like "don't Chinese people use that knife in their hand and the second you touch it you get cut. That shit is nice." At different times, [redacted] would engage for a second or two, and then make another random comment, seemingly to try to get a rise out of classmates. Most classmates ignored his comments, aside from the one in closest proximity to him. They were assigned an activity to help plan out their project. [redacted] and another student agreed to be partners. But [redacted] got up and started walking around the room. He went over to one student and started rubbing his head, to another student he was whispering things to him with his hands on his desk leaning over him. He walked by another student, Female Student, and she didn't like him getting close to her, and he made some comment to her, so she said something back as [redacted] was sitting down (they have a history of getting at it). With this, and I can't remember the words exchanged between them, but it was lots of [redacted] calling her a "bitch" and Female Student calling him a "whore" back. Female Student made a lot of comments about [redacted] not having enough money to buy new shoes, and he yelled more about her being a "fucking bitch." There was a lot of talk about their mothers, [redacted] saying something like "at least my mother didn't fuck the ...," as Ms. B tried to remove him from class. That didn't work, as he kept walking around the classroom to try to get closer to Female Student. Ms. B and myself were in their vicinity and physically in between the two so they didn't get closer to each other. They cotinued to yell things back and forth, [redacted] threatening "I'll hit you bitch" and Female Student responding "Go ahead whore, I'll hit you back". I was eventually able to get Female Student out of the room, as she continued to shout expletives at him as we walked into the hallway. Ms. B was able to keep [redacted] in the classroom as I took Female Student to the room across from Ms. Hinkson's office. I returned to the classroom a minute or two later, after texting Ms. Campbell, Ms. Hinkson, Ms. Estrado, and Ms. Saxon to see if they could provide assistance. As I was approaching the door, I saw [redacted] ripping the bulletin board boarder off the wall and tearing the paper off the board as well. When Ms. B tried to move out of the way of the swing of the door so I could enter, [redacted] pulled her out of the way to push around her and pushed through me to enter the hallway. I walked behind him, prompting him to make a better choice and we could walk somewhere else, and he said "I know where you took her. I'm going to fuck her up. I'll cut through there [career center] to get to her." But as I was on that side of him, he kept walking. He picked up speed and I tried to keep the entrance door to the office closed [Bell hallway b, bathrooms], but he shoved me with his side body out of the way, to fling open the door and ran into the office side hallway. I caught up with him again to try to warn Female Student/keep the door closed, but he again shoved me out of

[illegible] Then she got up and they were punching each other and moving [illegible] I [illegible] could maybe get Female Student out but they were tangled up. As they were tangled and moving around I got shoved with their bodies. I opened the door to call for help. That's when Female Student and [redacted] were free for a second and Female Student grabbed my hand/arm to come out of the room. She stood in the hallway as I closed the door behind me with [redacted] in the room, and other teachers/ adults/ security/ administrators came. I'm not sure where in the sequence of things with [redacted] this happened, but I have a scrape on my left ankle about 3/4 inches long, and a couple dots/little scraps above it. This might have been from [redacted] shoe when he was brushing by me/stepping around me to get through doors and to Female Student. It was burning a bit at first, but it feels better now. I'll keep an eye on it.

**From:** Joseph Golinker [mailto:joseph.golinker@camoranlaw.com]
**Sent:** Wednesday, December 02, 2015 2:11 PM
**To:** Hinkson, Resheeda A. (DCPS)
**Cc:** Shawn Smith (shawnnsmith516@gmail.com); Charles Moran
**Subject:** 12/2/15 Suspension

Ms. Hinkson,

Please forward me all of the information related to [redacted] behavior leading to the most recent suspension, along with any information about the determination of the proposed suspension, the manifestation determination, and the Office of Administrative Hearing determination regarding the proposed suspension.

Was [redacted] sent home today, and if so, with what instructions for return?

Thank you,

Joey

--

Joey Golinker
Law Clerk
Moran & Associates
1220 L Street NW Suite 700
Washington, DC 20005
Joseph.Golinker@camoranlaw.com
(P) 202.742.2005
(F) 202.742.2097

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Subject:** RE: [redacted] Suspension
**From:** "Hinkson, Resheeda A. (DCPS)" <resheeda.hinkson@dc.gov>
**Date:** 12/10/15, 12:48 PM
**To:** Joseph Golinker <joseph.golinker@camoranlaw.com>, Shawn Smith <shawnnsmith516@gmail.com>, Charles Moran <charles.moran@camoranlaw.com>
**CC:** "Rubenstein, Steven (DCPS)" <Steven.Rubenstein2@dc.gov>, "Mason, Archibald (DCPS)" <archibald.mason@dc.gov>

Good Afternoon again,

I will ask for the write up as he has been observed. Thanks

**From:** Joseph Golinker [mailto:joseph.golinker@camoranlaw.com]
**Sent:** Thursday, December 10, 2015 12:43 PM
**To:** Hinkson, Resheeda A. (DCPS); Shawn Smith; Charles Moran
**Cc:** Rubenstein, Steven (DCPS); Mason, Archibald (DCPS)
**Subject:** RE: [redacted] Suspension

Along the lines of "additional concerns," we still haven't heard anything from the LRE/LOS team. This isn't my only concern, but going one issue at a time seems to lead to the most consistent responses.

Has there been any word? This is now a months-old issue.

Joey

**From:** Hinkson, Resheeda A. (DCPS) [mailto:resheeda.hinkson@dc.gov]
**Sent:** Thursday, December 10, 2015 12:09 PM
**To:** Joseph Golinker <joseph.golinker@camoranlaw.com>; Shawn Smith <shawnnsmith516@gmail.com>; Charles Moran <charles.moran@camoranlaw.com>
**Cc:** Rubenstein, Steven (DCPS) <Steven.Rubenstein2@dc.gov>; Mason, Archibald (DCPS) <archibald.mason@dc.gov>
**Subject:** RE: [redacted] Suspension

Good Morning Mr Golinker

Please find attached a copy of the redacted referrals as promised. Please let me know if you have any additional concerns.

**From:** Joseph Golinker [mailto:joseph.golinker@camoranlaw.com]
**Sent:** Thursday, December 10, 2015 11:11 AM
**To:** Hinkson, Resheeda A. (DCPS); Shawn Smith; Charles Moran
**Cc:** Rubenstein, Steven (DCPS); Mason, Archibald (DCPS)
**Subject:** RE: [redacted] Suspension

Ms. Hinkson,

We need you to send us the meeting notes and documents that were withheld at the previous meeting, 11/30/2015. You took disciplinary records from us so that you could redact other students' names, and I only gave up my copy of the notes because you assured me that it wouldn't take long to redact and send them to me.

I'll talk with Ms. Smith about her availability for the proposed meeting time.

In the meantime, why has [redacted] been excluded from school for the past week?

Joey

**From:** Hinkson, Resheeda A. (DCPS) [mailto:resheeda.hinkson@dc.gov]
**Sent:** Thursday, December 10, 2015 3:03 AM
**To:** Shawn Smith <shawnnsmith516@gmail.com>; Joseph Golinker <joseph.golinker@camoranlaw.com>; Charles Moran <charles.moran@camoranlaw.com>
**Cc:** Rubenstein, Steven (DCPS) <Steven.Rubenstein2@dc.gov>; Mason, Archibald (DCPS) <archibald.mason@dc.gov>
**Subject:** RE: [redacted] Suspension

Good Evening Ms Smith and Mr Golinker

Please find attached a copy of the documentation which I previously forwarded to you in regards to your son's proposed suspension. I am requesting that the team meets on Friday December 11, 2015 at 1 pm to discuss his actions. Please let me know if this date and time works for you.

Thanks

**From:** Shawn Smith [mailto:shawnnsmith516@gmail.com]
**Sent:** Wednesday, December 09, 2015 2:55 PM
**To:** Joseph Golinker; charles.moran@camoranlaw.com; Hinkson, Resheeda A. (DCPS)
**Subject:** Re: [redacted] Suspension

Mrs. Hinkson

When you decide on a proposed date please contact Mr. Golinker to schedule the meeting he will in turn contact me for availability..
Best,
Shawn Smith

On Dec 9, 2015 2:17 PM, "Shawn Smith" <shawnnsmith516@gmail.com> wrote:

Good afternoon Mrs. Hinkson

It has been a week and I have not received any paper work regarding my son [redacted] suspension except the paper that dismissed him early that had no information on it, Nor have I received anything regarding his proposed suspension of the 36 days or a date for a manifestation meeting. My son is currently still sitting at home with no type of school work or any knowledge of what is going on with

him obtaining his education. I would greatly appreciate it if you or someone from the school could contact me regarding this matter for I don't feel it is in a child's best interest to not be receiving any type of education.

Please have some one contact me or let me know what is the proposed suspension, what is it he is actually being suspended for, what is the amount of days he is to be out , please take in account of the 5 days already spent out of school, and a date and time for the manifestation meeting.

Best,

Shawn Smith

Come to EdFEST, DC's citywide school fair, on Saturday, December 12 from 11:00am to 3:00pm at DC Armory (2001 E Capitol St SE). Explore 200+ DCPS and public charter school options for your child. Bring the whole family – fun activities for all!
Come to EdFEST, DC's citywide school fair, on Saturday, December 12 from 11:00am to 3:00pm at DC Armory (2001 E Capitol St SE). Explore 200+ DCPS and public charter school options for your child. Bring the whole family – fun activities for all!
Come to EdFEST, DC's citywide school fair, on Saturday, December 12 from 11:00am to 3:00pm at DC Armory (2001 E Capitol St SE). Explore 200+ DCPS and public charter school options for your child. Bring the whole family - fun activities for all!

Columbia Heights Educational Campus

Bell Multicultural High School
Lincoln Multicultural Middle School
3101 16th Street, N.W.
Washington, D.C. 20010
202 939-7700

## Student Safety Contract

I [redacted]__________, understand that due to my past aggressive behavior, I will be allowed to continue at Columbia Heights educational Campus as long as I honor this safety contract. If I violate any more chapter 25 infractions, I will be recommended for placement in another educational program. As itemized in this contract, I agree to:

- Show consideration to adults and peers **at all times**
- Prevent any verbal aggression, threats, and physical aggression **at all times**
- Inform any adult of my need to be left alone for 5-10 minutes to think before acting
- Follow the rules that "Always Apply
- Acknowledge the fact that others have feelings just like I do
- Request to discuss any troubling situation with specific adults (Ms. Garner/Mr. Odom
- Participate in a positive manner in all clases
- Daily complete the "I Know Myself Rating Scale"

In addition, I understand that I have been assigned to:

X Attend individual sessions to assist me in achieving my attendance, academic, and/or Behavior goals: Ms. Garner

X Meet with a staff mentor assigned to me: Ms. Garner/Ms. Estrado/Ms. Barnett/Mr. Odom

In addition, I understand that the:

X Multidisciplinary team will monitor my progress: Weekly

X Multidisciplinary team and parent/guardian will meet: As needed

X Behavior monitoring will occur for a period of: Throughout the school year

I understand my obligations are:

Use of appropriate acdemic language throughout the campus when speaking to adults,

EXHIBIT
tabbies
R-6-1

staff and students by refraining from threatening others and participating in conflicts with adults, staff, and students.

Actively participate/cooperate with adults to prevent physical aggression.

Actively participate/communicate in a positive manner to prevent any form of negative interaction with adults and students.

I understand that I must fulfill all obligations set forth in this contract because physical aggression and the destructon of property are not tolerated. I f I break this contract the folllowing consequences will occur:

- First Violation – parental conference and written warning
- Second Violation – conference for a final decisión on my school's status

[redacted]
Student

Social Worker

Special Education Administrator

12/16/15
Date



R-6-2

DISTRICT OF COLUMBIA
PUBLIC SCHOOLS

# Office Discipline Referral Form

**Date:** 15.Jan.2014

**Name of person referring (first and last):** Felix Breedlove

**Student name (first and last):** Mr. [redacted]

**Location of incident:** 3rd. Floor - near Ms. Gardner's Room **Time of incident:** About 10.15

**Briefly describe the specific behavior warranting referral:** I was walking to Ms. Estrado's classroom, whilst talking to Edward, in which I was informing him that she was not in her office at the moment, however I shall relay a message for her active persual. It was during this time, that I was [redacted] walking towards me to say hello. I said hello back to them and re-engaged my conversation with Edward. It was during this time, that Mr. [redacted] said Mr. Breedlove and starting coming towards me and jumped on me. I fell back against the wall, hitting my head on the concrete, and dropped my items on the floor.

I got back up and witnessed Mr. [redacted] running away laughing, I proceeded to chase after him, saying why did you do such a thing, it is not funny and I could have been seriously hurt.

He kept running down the stairs and I returned to get my items and proceed to Ms. Estrado's class.

In addition, it was during this situation that my labtop fell to the floor and the side is now broken. Please refer to the attached images, for your active review.

**Please list any others involved in incident as necessary (list names)**

☐ Peers ☐ Staff ☐ Teacher ☒ Other: Students - [redacted]

Name(s):

| Did you attempt any of the following classroom strategies before referring? | |
|---|---|
| ☐ Asked student to explain situation | ☐ Positive reinforcement for appropriate behavior |
| ☐ Changed seating | ☐ Presented both written and verbal directions |
| ☐ Coaching/met with student | ☐ Proximity to student |
| ☐ De-escalation strategy | ☐ Reduced distractions |
| ☐ Differentiated instruction/task | ☒ Verbal redirection (restate expectations) |
| ☐ Increased positive interactions with student | ☐ Other strategy: |
| ☐ Non-verbal attention/visual cue | |

**PLEASE COMPLETE AND SUBMIT TO PRINICPAL OR DESIGNATED DISCIPLINE PERSONNEL FOR YOUR SCHOOL**

**FOR ADMINISTRATIVE USE ONLY:**

**Date Received:** **Tier Behavior Code(s):**

RE: [redacted]

**Subject:** RE: [redacted]
**From:** "Hinkson, Resheeda A. (DCPS)" <resheeda.hinkson@dc.gov>
**Date:** 2/1/16, 1:12 AM
**To:** Shawn Smith <shawnnsmith516@gmail.com>
**CC:** Joseph Golinker <joseph.golinker@camoranlaw.com>, "Rubenstein, Steven (DCPS)" <Steven.Rubenstein2@dc.gov>

Good Morning Ms. Smith

Thank you for inquiring as to clarification from our last meeting. As we discussed [redacted] proposed location of service is Cardoza. I am happy to share that your concerns for [redacted] safety at Cardoza, as a result of his previous physical altercation with 3 students from LaSalle Backus will be none existence as these students do not attend Cardoza's BES class. As for additional placements I do not have any other placement to provide you with at this time.

In addition to our proposed placements change we discussed [redacted] opportunity to apply to UDC's early college program and the possibility of lowering his instructional hours so that he can attend inclusion classes.

Please let me know your thoughts on our proposed next steps for [redacted]

**From:** Shawn Smith [mailto:shawnnsmith516@gmail.com]
**Sent:** Thursday, January 28, 2016 2:51 PM
**To:** Hinkson, Resheeda A. (DCPS)
**Cc:** Joseph Golinker
**Subject:** [redacted]

Good afternoon Ms. Hinkson

Last week we had a meeting for [redacted] and we were discussing behavioral issues which was a concern to the school. I believe there were some options presented , however I am not clear with what all the options were , or if there was more than one. I remember talking about another school placement which I believe was Cardoza. We're there any other options discussed.. I really don't feel comfortable with Cardoza for [redacted] and I would like to see if , if any there were other alternatives. Please get back to me as soon as you can so this matter can be resolved and I may be able to find adequate school placement for my son.

Best,

Shawn Smith

OSSE
Office of Dispute Resolution
February 4, 2016

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
**OFFICE OF DISPUTE RESOLUTION**

HEARING REQUEST

## A. REQUEST FOR EXPEDITED HEARING

Ms. Smith does NOT request an expedited hearing.

## B. STUDENT INFORMATION

Name: [redacted]
Date of Birth: [redacted]
Parent: Lashawn Smith
Address: 206 Webster Street NE, Apt. 1 Washington, D.C. 20011
Present School: Columbia Heights Education Campus ("CHEC")

## C. INDIVIDUAL MAKING THE COMPLAINT

Parent: Lashawn Smith
Address: 206 Webster Street NE, Apt. 1 Washington, D.C. 20011

## D. LEGAL REPRESENTATIVE

Charles A. Moran
Moran & Associates
1220 L Street NW, Suite 700
Washington, D.C. 20005
(P) 202 742-2022
(F) 202 742-2097
Charles.Moran@camoranlaw.com

## E. ESTIMATED TIME FOR HEARING

One (1) half day.

## F. ACCOMMODATIONS AND ASSISTANCE NEEDED

No accommodtions are necessary for this proceeding.

## G. WAIVER OF PROCEDURAL SAFEGUARDS

Ms. Smith waives receipt of a copy of the procedural safeguards.

## H. COMPLAINT MADE AGAINST

District of Columbia Public Schools ("DCPS");
Office of the State Superintendent of Education ("OSSE");
District of Columbia ("the District").

## I. BASIS FOR COMPLAINT

### FACTS

1. A.J. is a 14 year-old residing in the District of Columbia.
2. A.J. is a student at Columbia Heights Education Campus ("CHEC") in the ninth (9th) grade, for which DCPS is the Local Education Agency.
3. A.J. is a student with disabilities eligible to receive special education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA").
4. A.J.'s disability is classified as "emotional disturbance" and his disability manifests in conflicts with peers and school staff at an elevated rate, sometimes rising to the level of a physical altercation 2-3 times per week. A.J. has trouble taking responsibility for his actions and resolving conflicts appropriately.
5. A.J.'s academics suffer when he is off task, but has been described as "eager to learn" and when engaged A.J. "has demonstrated he can follow directions, complete[] tasks[,] and remain respectful to adults."
6. At the beginning of the 2015-2016 school year A.J. was assigned to CHEC and was placed in the Specific Learning Support ("SLS") Program.
7. SLS classrooms are designed to accommodate students with specific learning disabilities. SLS classes consist of a special education teacher and a paraprofessional who are trained to meet the needs of students with learning disabilities and complex learning styles.

8. A.J. does not have a specific learning disability. A.J. is a "twice exceptional" student who is intellectually gifted, but limited in accessing the general education curriculum by his emotional disturbence.

9. A.J. gets bored in his classes easily when he finishes his work faster than his peers. This happened frequently when A.J. was in the SLS classroom.

10. When A.J. gets bored, his behavioral issues emerge, and over the last four months there have been numerous disciplinary referrals and findings that each one was a manifestation of A.J.'s disability.

11. Following a disciplinary referral DCPS would remove A.J. from the educational environment and inform Ms. Smith that he could not return until a "welcome back" meeting was held a few days later. This process was the functional equivalent of suspending A.J. for a few days at a time without any of the procedural protections afforded to students with disabilities facing disciplinary charges.

12. CHEC offered to move A.J. to a Behavior & Education Support ("BES") Program which would implement a full time IEP outside the general education setting with supports for students with emotional disabilities.

13. The only "cohort" of students in the BES program at CHEC is in 10th grade. When A.J. joined them, he was given 9th grade work while his peers around him were given 10th grade instruction. It was never made clear how A.J.'s instruction in this environment was provided.

14. Despite being in a full-time, outside-of-general-education environment specifically tailored to address A.J.'s emotional disturbance and behavioral problems, manifestations of A.J.'s disability continued, and he did not progress academically at the rate he would have in an appropriate placement.

15. Ms. Smith requested in November of 2015 that A.J. be evaluated for eligibility for advanced placement classes because of previous evaluations that found A.J. to have "high-average" and "superior" academic skills.
16. DCPS personnel responded that there is no evaluation for DCPS' enrichment opportunities, but that educational programming decisions were made by the IEP team.
17. The IEP team agreed that A.J. needed advanced academics as a measure to lessen the frequency of behavioral manifestations of his disability.
18. At the most recent school team meeting DCPS offered Ms. Smith the option for [redacted] to move [redacted] to Advanced Placement classes, but only if Ms. Smith agreed to reduce the number of service hours on his IEP. Allowing [redacted] to take UDC classes for college credit was also discussed, with the same reservation; that [redacted] IEP would need to be amended to reduce the service hours to allow access to advanced educational opportunities.
19. DCPS does not offer a full-time, outside-of-general-education environment with advanced programming that can meet A.J.'s educational and behavioral needs simultaneously.

**LEGAL ARGUMENT**

20. Ms. Smith reincorporates all previous statements.
21. The IDEA (20 U.S.C. § 1400 et seq.) provides that students in public schools receiving federal funds shall provide students with disabilities with a free appropriate public education ("FAPE"). A FAPE is defined as special education and related services that are provided at public expense, under public supervision and direction, and without charge; that meet the standards of the State educational agency; that include an appropriate preschool, elementary school, or secondary school education in the State involved; and are provided in conformity with the individualized education program ("IEP"). 20 U.S.C. § 1401.
22. An IEP must state the present levels of acadmic functioning, describe how a students' disability

under the IDEA or Advanced Placement classes offered to students in D.C.'s public schools, DCPS has violated the ADA by denying access to Advanced Placement classes because of A.J.'s disability.

## J. REQUEST FOR RELIEF

Ms. Smith, by and through undersigned counsel, resepctfully requests:

1. A hearing before an impartial hearing officer appointed pursuant to all applicable state and federal laws, including but not limited to the IDEA (20 U.S.C. § 1400 et seq.), and the Special Education Due Process Hearing Independence and Transparency Act of 2014 (D.C. Code § 38-2572);
2. That DCPS within ten (10) calendar days of the filing of this complaint, pursuant to 20 U.S.C.§ 1415 (c)(2)(B), provide the following: i) an explanation of why DCPS proposed or refused to take the action raised in the complaint; ii) a description of other options that DCPS considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;
3. In the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and the parent's administrative due process hearing will be scheduled pursuant to the applicable time lines contained in the IDEA;
4. A finding that DCPS denied A.J. a FAPE by failing to provide an appropriate IEP and an appropriate placement for the 2015-2016 school year.
5. A findng that DCPS violated the ADA when it refused to allow A.J. to enter advanced

placement classes with appropriate accommodations for his disability.[1]

6. Compensatory education to remedy any denial of FAPE identified by the hearing officer;
7. An order for DCPS to place A.J. in a sufficiently advanced and restricetive educational placement to meet his unique needs as a "twice exceptional" student;
8. Attorneys' fees and costs;
9. Any other relief the hearing officer deems appropriate.

**K. CONCLUSION**

A.J. is a "twice exceptional" student who DCPS placed in a clasroom designed to combat learning disabilities. Unsurprisingly, A.J. did not flourish in that environment, and his behavioral problems worsened. In an attempt to remedy the initial placement error, DCPS removed A.J. from an age-appropriate classroom and placed him in a classroom designed to combat behavioral issues. Even in this environment A.J.'s disability prevents him from accessing the curriculum and making academic progress.

Charles A. Moran
Moran & Associates
*Counsel for Petitioner*

1Ms. Smith requests permission to administratively exhaust these issues through preliminary briefs in the event that the Hearing Officer rules that the Hearing Office lacks subject matter jurisdiction to fully adjudicate these claims.

# Corporate eFax message from "2027422097" - 8 page(s)

eFax Corporate <message@inbound.efax.com>

Thu 2/4/2016 12:34 PM

To:HearingOffice, Student (OSSE) <Student.HearingOffice@dc.gov>;

1 attachment

FAX_20160204_1454607267_157.tif;

eFax Corporate
World Leader in Digital Faxing

**You have received a 8 page fax at 2016-02-04 12:34:27 EST.**

* The reference number for this fax is atl_did12-1454606994-12024782956-157.

Please visit www.efaxcorporate.com/corp/twa/page/customerSupport if you have any questions regarding this message or your service. You may also e-mail our corporate support department at corporatesupport@mail.efax.com.

Thank you for using the eFax Corporate service!

j2 eFax eVoice FuseMail campaigner™ KeepItSafe onebox

© 2015 j2 Cloud Services, Inc. All rights reserved.
eFax Corporate is a registered trademark of j2 Cloud Services, Inc.

This account is subject to the terms listed in the eFax Corporate Customer Agreement.

# 1

ODR
OFFICE OF DISPUTE RESOLUTION

# Notice of Hearing Officer Appointment

| | | | |
|---|---|---|---|
| **To:** | **Charles Moran** | **Telephone :** | **(202) 742-2022** |
| | Parent and Legal Counsel, if known | **Fax:** | **(202) 742-2097** |
| | | **Email:** | charles.moran@camoranlaw.com |
| **To:** | **Steven Rubenstein** | **Telephone :** | **(202) 442-5000** |
| | LEA or LEA Legal Counsel, if known | **Fax:** | **(202) 442-5098** |
| | | **Email:** | steven.rubenstein2@dc.gov |
| **To:** | **Zoe Thomas** | **Telephone :** | **(202) 724-2010** |
| | SEA or SEA Legal Counsel, if known | **Fax:** | **(202) 299-2134** |
| | | **Email:** | zoe.thomas@dc.gov |

**FROM:** Office of Dispute Resolution Scheduling Coordinator

**RE:** **Case Number:** **2016** - **0023** v. **DCPS/OSSE**

**Student Name:** [redacted]

**Student's DOB:** [redacted] **Attending School:** **Columbia Heights ECHS**

The Office of the State Superintendent of Education (OSSE), Office of Dispute Resolution (ODR), received a Due Process Complaint on **2/4/2016** . The Hearing Officer appointed to this due process complaint and the Hearing Officer's telephone, fax number and email address is:

| Hearing Officer | Telephone | Fax | Email Address |
|---|---|---|---|
| Keith Seat | 301 681-7450 | | keith.seat@dc.gov |

The following dates and times have been provisionally scheduled in order to have a timely HOD if this matter is not resolved and proceeds to a hearing:

**Pre-Hearing Conference Date & Time:** **2/18/2016 4:00 PM**

**Due Process Hearing Date & Time:** **3/18/2016 9:00 AM – 5:00 PM**

**Unless otherwise assigned, all Due Process Hearings will be conducted at 810 First Street, NE, 2nd Floor, Washington, DC 20002. Pre-Hearing Conferences will be telephonic, unless the Hearing Officer orders otherwise.** If the parties have agreed in writing to waive the resolution meeting, the timeline for the conduct of the hearing and the issuance of the HOD commences the day after the written agreement. Therefore the parties must file the written agreement with ODR with a copy to the Hearing Officer as soon as possible.

**THIS IS A PROVISIONAL NOTICE**: It is the Hearing Officer who will confirm the pre-hearing conference and hearing date and time. If you are unavailable for the above pre-hearing conference date and/or time, please confer with the other party and contact the Hearing Officer with an alternative date and time. The date and time for the hearing will be confirmed during the pre-hearing conference. You will have the opportunity during the pre-hearing conference to inform your appointed Hearing Officer if you are unavailable for the provisional date and/ or time for your hearing, and to specify a date and/ or time when you are available.

**IMPORTANT NOTICE**: If the parties agree in writing: (1) to waive the resolution meeting; or, (2) after the resolution meeting or mediation starts the parties agree that no agreement is possible before the end of the 30-day resolution period, COUNSEL FOR BOTH PARTIES IMMEDIATELY SHALL FILE A COPY OF THE AGREEMENT AND/OR DISPOSITION FORM with the Hearing Officer. The date the last party signs the waiver or agreement, as the case may be, will trigger the start of the 45-day timeline in which the Hearing Officer must render a decision and require the Hearing Officer to immediately schedule the prehearing conference and due process hearing. If the parties desire to continue settlement discussions or mediation beyond the 30-day resolution period, COUNSEL FOR BOTH PARTIES SHALL ADVISE THE HEARING OFFICER IMMEDIATELY so the Hearing Officer may address any necessary adjustments to the due process hearing timeline.

**After the filing of the original Due Process Complaint, counsel shall address all further communications solely to the appointed Hearing Officer. Counsel shall file all responsive pleadings, motions, or other documents regarding this matter with BOTH the Office of Dispute Resolution and the Hearing Officer. Any documents filed solely with the Office of Dispute Resolution will not be considered properly filed.**

***If documents issued by ODR for your hearing need to be translated in a language other than English, please notify your assigned Hearing Officer or the Office of Dispute Resolution.**

***Please be advised that Electronic filing is permitted for all documents.**

Finally, at or before the prehearing conference the Hearing Officer will ask both counsel to confirm the following information regarding the subject student:
DOB:____[redacted]____; and, Student I.D. number 9206289. Please be prepared to do so.

Signature: *Sharon Courm*

Date: 3/5/2016

cc: Hearing Officer

# 2

OSSE
Office of Dispute Resolution
February 8, 2016

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
**STUDENT HEARING OFFICE**

| | |
|---|---|
| Lashawn Smith,<br>On behalf of [redacted]<br><br>Petitioner,<br><br>v.<br><br>D.C. Public Schools<br>&<br>the Office of the State<br>Superintendent of Education,<br><br>Respondents. | Case Number 2016-0023<br>Hearing Officer Keith Seat |

**THE OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION'S**
**MOTION TO DISMISS FOR FAILURE TO SERVE**

The Office of the State Superintendent of Education ("OSSE"), by counsel, respectfully moves the Hearing Officer to dismiss the claims against OSSE because Petitioner failed to serve a copy of the complaint on OSSE.

The Individuals with Disabilities Education Act of 2004 mandates the service of complaints on all parties. 20 U.S.C. § 1415(b)(7)(A)(i); 34 C.F.R. § 300.508(a)(1). Consistent with this, the District's Special Education Student Hearing Office Due Process Hearing Standard Operating Procedures ("SOP") requires the Petitioner to simultaneously serve on all parties or party representatives the complaint filed with the Student Hearing Office. SOP §§ 204 and 301.[1] On February 5, 2016, OSSE received an email from the Office of Dispute Resolution indicating that they had received a complaint

[1] Although the SOP does not appear to contemplate the OSSE—which is the state educational agency in the District—as a responding party, it clearly states that all parties must be served.

that had OSSE listed as a party. Additionally, on February 5, 2016, OSSE received a copy of the Notice of Hearing Officer Appointment sent by the Office of Dispute Resolution. Finally, on February 6, 2016, the designated Hearing Officer sent a scheduling email to all parties. These emails from the Office of Dispute Resolution were the only notices OSSE received regarding the filing of the complaint. Filing the complaint with the forum hearing the dispute does not constitute service upon OSSE – an actual party-respondent to the case.

Since the Petitioner has failed to serve OSSE with a copy of the complaint, the claims against OSSE should be dismissed.

Respectfully submitted,

OFFICE OF THE STATE
SUPERINTENDENT FOR EDUCATION
Office of General Counsel

/s/

Zoe Cooper Thomas
Bar No. 1005962
Assistant Attorney General
Office of the General Counsel
Office of the State Superintendent of Education
810 First Street, NE, 9th Floor
Washington, DC 20002
(202) 724-2010 (main)
(202) 299-2134 (fax)
Zoe.Thomas@dc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February, 2016, a copy of this Office of the State Superintendent of Education Motion to Dismiss for Failure to Serve was sent via email to the following parties:

Charles Moran, for the Petitioner [charles.moran@camoranlaw.com]
Steven Rubenstein, for DCPS [steven.rubenstein2@dc.gov]
Hearing Officer Keith Seat [keith.seat@dc.gov]
Student Hearing Office [hearing.office@dc.gov]

BY:

_____/s/_____________________

Zoe Cooper Thomas

# DPC Case # 2016-0023 - [redacted] OSSE MTD

Thomas, Zoe (OSSE) <zoe.thomas@dc.gov>

Mon 2/8/2016 11:18 AM

To:Seat, Keith (OSSE-Contractor) <keith.seat@dc.gov>; charles.moran@camoranlaw.com <charles.moran@camoranlaw.com>; Rubenstein, Steven (DCPS) <Steven.Rubenstein2@dc.gov>;

Cc:HearingOffice, Student (OSSE) <Student.HearingOffice@dc.gov>; HearingOffice, Student (OSSE) <Student.HearingOffice@dc.gov>;

1 attachment

OSSE Motion to Dismiss for Failure to Serve,[redacted]pdf;

Please find attached for filing OSSE's first motion to dismiss in this case.

Thank you,

Zoe C. Thomas
Assistant General Counsel
Office of the General Counsel
Office of the State Superintendent of Education (OSSE)
Government of the District of Columbia
Direct (202) 724-2010
Fax (202) 299-2134

Learn the basics of life-saving hands only CPR in 20 minutes. Visit the DC FEMS Hands on Hearts campaign at <http://handsonhearts.dc.gov/> to sign up for existing classes or email hands.onhearts@dc.gov <mailto:hands.onhearts@dc.gov> to schedule a class for your office or organization.

# 3

OSSE
Office of Dispute Resolution
February 10, 2016

**DISTRICT OF COLUMBIA**
**OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION**
**STUDENT HEARING OFFICE**

| | |
|---|---|
| Lashawn Smith,<br>On behalf of [redacted]<br><br>Petitioner,<br><br>v.<br><br>D.C. Public Schools<br>&<br>the Office of the State<br>Superintendent of Education,<br><br>Respondents. | Case Number 2016-0023<br>Hearing Officer Keith Seat |

**THE OFFICE OF THE STATE SUPERINTENDENT OF EDUCATION'S**
**MOTION FOR A CONTINUANCE**

The Office of the State Superintendent of Education ("OSSE"), by counsel, moves for a continuance of the timeline for issuance of a decision in the due process complaint against OSSE. Pursuant to 34 C.F.R. §300.515 and Section 400 of the Student Hearing Office Standard Operating Procedures, a Hearing Officer must issue final decisions with respect to due process complaints forty-five days after the end of the resolution period. However, due process complaints filed against state education agencies do not have required resolution periods and consequently, in this matter, the timeline for the Hearing Officer to issue a decision regarding OSSE and District of Columbia Public Schools are different. OSSE submits that it would be a more efficient use of resources to hear both claims during the same due process hearing. Therefore,

OSSE moves for a continuance of the Hearing Officer's decision timeline to align it with District of Columbia Public Schools' decision timeline.

Respectfully submitted,

OFFICE OF THE STATE
SUPERINTENDENT FOR EDUCATION
Office of General Counsel

___/s/________________________________
Zoe Cooper Thomas
Bar No. 1005962
Assistant Attorney General
Office of the General Counsel
Office of the State Superintendent of Education
810 First Street, NE, 9th Floor
Washington, DC 20002
(202) 724-2010 (main)
(202) 299-2134 (fax)
Zoe.Thomas@dc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of February, 2016, a copy of this Office of the State Superintendent of Education's Motion for a Continuance was sent via email to the following parties:

Charles Moran, for the Petitioner [charles.moran@camoranlaw.com]
Steven Rubenstein, for DCPS [steven.rubenstein2@dc.gov]
Hearing Officer Keith Seat [keith.seat@dc.gov]
Student Hearing Office [hearing.office@dc.gov]

BY:

_____/s/____________________

Zoe Cooper Thomas

# DPC Case # 2016-0023 - [redacted] OSSE Motion for Continuance

Thomas, Zoe (OSSE) <zoe.thomas@dc.gov>

Wed 2/10/2016 2:30 PM

To:Seat, Keith (OSSE-Contractor) <keith.seat@dc.gov>; charles.moran@camoranlaw.com <charles.moran@camoranlaw.com>; Rubenstein, Steven (DCPS) <Steven.Rubenstein2@dc.gov>;

Cc:HearingOffice, Student (OSSE) <Student.HearingOffice@dc.gov>; HearingOffice, Student (OSSE) <Student.HearingOffice@dc.gov>;

1 attachment

OSSE Motion for Continuance, [redacted] pdf;

Please find attached for filing OSSE's motion for a continuance to align the timelines.

Thank you,

Zoe C. Thomas
Assistant General Counsel
Office of the General Counsel
Office of the State Superintendent of Education (OSSE)

Learn the basics of life-saving hands only CPR in 20 minutes. Visit the DC FEMS Hands on Hearts campaign at <http://handsonhearts.dc.gov/> to sign up for existing classes or email hands.onhearts@dc.gov <mailto:hands.onhearts@dc.gov> to schedule a class for your office or organization.

# 4